## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROSALYNN WALKER, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| SETERUS, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | <u>Jury Demanded</u> |

## <u>COMPLAINT</u>

Plaintiff Rosalynn Walker, through undersigned counsel, brings this complaint against Defendant Seterus, Inc., and alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action for damages for violations of the Real Estate Settlement Procedures Act ("<u>RESPA</u>") and the Illinois Consumer Fraud and Deceptive Practices Act ("<u>ICFA</u>").

2.      All of the claims stated herein stem from Defendant's wrongful servicing and debt collection activities related to a mortgage loan secured by a first lien on Plaintiff's home.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 as Plaintiff's claims arise, in part, under RESPA, 12 U.S.C. § 2614. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4.      Venue is proper in this District under 28 U.S.C. § 1391, as the subject property is located here and the events complained of occurred in this District.

1

**PARTIES**

5.     Plaintiff Rosalynn Walker is a natural person and resident of Cook County, Illinois.

6.     Plaintiff Rosalynn Walker purchased the property located at 7014 S. Oglesby Ave., #2, Chicago, Illinois 60649 (the "subject property") on or about January 25, 2008 as her primary family residence.

7.     Plaintiff is a "consumer" as defined by Section 1(e) of ICFA.

8.     Defendant Seterus, Inc. ("Seterus") is a Delaware corporation with its principal place of business at 14523 SW Millikan Way, #200, Beaverton, Oregon.

9.     Seterus does business in Illinois, including in this District, and has a registered agent in Illinois.

10.     Seterus acts as a servicer of mortgage loans, including in the State of Illinois, and is the servicer of Plaintiff's mortgage on the subject property.

**FACTS SUPPORTING CAUSES OF ACTION**

11.     On January 25, 2008, Plaintiff executed a mortgage loan with CitiMortgage, Inc. in the amount of $75,000.00 on behalf of Plaintiff (the "subject loan").

12.     The subject loan was secured by a first lien on the subject property, which is designed principally for the occupancy of one family, and which serves as Plaintiff's primary residence.

13.     The subject loan is a federally related mortgage loan as defined in Section 2602(1) of RESPA.

14.     On February 7, 2014, the subject loan was sold to the Federal National Mortgage Association ("Fannie Mae").

2

15.     Seterus serviced the subject loan on behalf of Fannie Mae.

16.     In 2014, Plaintiff experienced financial hardship and fell behind on her payments on the subject loan.

**A. Plaintiff enters into a trial period plan to modify the subject loan and makes all payments required to receive a permanent modification**

17.     On July 9, 2014, Seterus sent Plaintiff a letter notifying Plaintiff that she had been approved for a trial period plan.

18.     The trial period plan required three monthly payments of $439.24 in August, September, and October 2014.

19.     Seterus subsequently contacted Plaintiff by phone in August 2014 to have her complete a telephonic loss mitigation application.

20.     Plaintiff answered all of Seterus' questions and completed the loss mitigation application.

21.     Plaintiff was also told that after she completed the trial period payments, she should would be getting permanent modification documents that she would need to sign and return to Seterus.

22.     Plaintiff timely made all three payments required under the trial period plan in August, September, and October 2014.

23.     After completing the three payments, however, Plaintiff did not receive any communications or documents regarding the permanent modification of the subject loan.

**B. Plaintiff follows up with Seterus about the permanent modification documents and is told they will be sent to her, and Plaintiff continues to make monthly payments while waiting for Seterus to provide her with the documents**

24.     On or around November 3, 2014, Plaintiff called Seterus to make another monthly payment of $439.24 on the subject loan.

3

25.     Seterus accepted Plaintiff's November 2014 payment.

26.     On that call, Plaintiff inquired about the permanent modification documents, and recounted to the Seterus representative that she had been told that she would need to sign and return the permanent modification documents.

27.     The Seterus representative told Plaintiff that she would receive the permanent modification documents in the mail.

28.     On or around November 18, 2014, Plaintiff had still not received the permanent modification documents, and she became concerned. She called Seterus again to inquire about the permanent modification documents.

29.     This time the Seterus representative informed Plaintiff that Seterus was behind on modifications, and that Seterus would be sending out the permanent modification documents to Plaintiff as soon as they were ready.

30.     In December 2014 Plaintiff made another payment of $439.24 to Seterus by phone, using Seterus' automated phone payment system.

31.     Seterus accepted Plaintiff's December 2014 payment.

**C. Seterus suddenly rejects Plaintiff's January 2015 payment and refers Plaintiff's account to foreclosure without ever giving Plaintiff an opportunity to review, sign, and return permanent modification documents**

32.     On or around January 3, 2015, Plaintiff called Seterus to make another payment of $439.24.

33.     On this call, Seterus rejected Plaintiff's payment.

34.     The Seterus representative further informed Plaintiff that Plaintiff's loan had been referred to attorneys for foreclosure.

35.     Plaintiff was shocked and confused, and asked why her mortgage was in foreclosure when she had been making all the payments.

4

36. The Seterus representative told Plaintiff that it was due to Plaintiff's failure to sign and return the permanent modification documents. Plaintiff told the Seterus representative that she had never received the permanent modification documents.

37. The Seterus representative told Plaintiff that Seterus' electronic records showed that Seterus had sent the permanent modification documents to Plaintiff.

38. On January 6, 2015, Seterus sent Plaintiff a letter rescinding its loan modification offer to Plaintiff, claiming that its reason was Plaintiff's failure to return the permanent modification documents.

39. Throughout January, February, and March 2015, Plaintiff called Seterus numerous times to try and resolve the wrongful denial of her loan modification, but Seterus refused to honor the modification.

40. On March 13, 2015, the law firm of Johnson, Blumberg & Associates, LLC ("JBA") sent Plaintiff a letter stating that her mortgage account had been referred to the firm to file a foreclosure action against her.

41. On March 16, 2015, JBA sent Plaintiff another letter stating that Seterus had referred Plaintiff's account to JBA to sue her for foreclosure.

42. On April 16, 2015, JBA filed a foreclosure action against Plaintiff, styled as *Federal National Mortgage Assc'n v. Walker, et al.*, Case No. 2015 CH 06398 in the Circuit Court of Cook County, Illinois, Chancery Division (the "foreclosure action").

43. On June 1, 2015, Plaintiff filed a *pro se* answer in the foreclosure action and paid an appearance fee of $206.

**D. Plaintiff learns that Seterus knew or could have easily determined that the permanent modification documents were never provided to Plaintiff**

44.     On June 16, 2015, while on her way to the first hearing in the foreclosure action, Plaintiff called Seterus to try once again to resolve the continued denial of her permanent modification.

45.     Plaintiff spoke with a Seterus representative and asked the representative for the tracking information associated with Seterus mailing her the permanent modification documents. The Seterus representative gave her FedEx tracking number 771859283111.

46.     Plaintiff immediately used a tablet computer to access the Internet and check the FedEx number that the Seterus representative had provided.

47.     The FedEx website reported that the package containing the permanent modification documents had never been delivered to Plaintiff.

48.     In fact, Seterus never even tendered the package containing the permanent modification documents to FedEx for delivery to Plaintiff.

49.     As a result, Plaintiff never received the package containing the permanent modification documents.

50.     Prior to denying Plaintiff for a loan modification and referring her account to JBA for foreclosure, Seterus could have easily determined that it had not sent the permanent modification documents, and that Plaintiff had never received them.

51.     At the hearing in the foreclosure action on June 16, 2015, Plaintiff explained the circumstances regarding the permanent modification documents to the presiding judge and the JBA attorney in attendance.

52.     Later in June 2015 a Seterus representative told Plaintiff that Seterus would honor the modification she had originally qualified for if she made a lump-sum payment covering the mortgage payments owed in January, February, March, April, May, June, and July 2015.

53.     Plaintiff had saved the amounts for each such payment after Seterus rejected her January 2015 payment, and was able to make the lump-sum payment Seterus demanded.

**E.  Damages suffered by Plaintiff as a result of Seterus' misconduct**

54.     As a direct and proximate result of Seterus' misconduct Plaintiff was forced to miss two and one-half days of work to attend court proceedings in the foreclosure action, to meet with legal aid workers to assist her in responding to Seterus' lawsuit, and to meet with the Chicago Urban League to submit additional documents demanded by Seterus. Plaintiff was temping at the time, and lost her hourly wages for the time she was forced to take off.

55.     As a direct and proximate result of Seterus' misconduct, Plaintiff was forced to pay an appearance fee of $206 in the foreclosure action.

56.     As a direct and proximate result of Seterus' misconduct, the subject loaned earned interest on payments rejected by Seterus, resulting in substantial financial harm to Plaintiff.

57.     Seterus also charged attorney's fees, court costs, and other amounts to Plaintiff's account arising from or related to the wrongful foreclosure action.

58.     Plaintiff is a single mother with two children, one of whom is disabled. She was devastated by the denial of the loan modification even after she had done everything she was supposed to have done, and terrified by the foreclosure action. She was ashamed to be in foreclosure, and embarrassed in front of her children, feeling that she had failed as a mother. She feared that her family would be evicted from their home.

59.     As a result of Seterus' misconduct, Plaintiff lost sleep, cried, and was unable to discuss the matter without breaking down. She felt helpless, hopeless, and depressed. She gained weight. She suffered painful flare-ups of her fibromyalgia condition, to the point of being unable to walk more than a couple of blocks without crippling pain. The pain prevented her from

7

wearing formal shoes or carrying heavy things and significantly interfered with her daily life and activities.

<u>**COUNT I – VIOLATIONS OF THE RESPA**</u>

60. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

61. The subject loan is a "federally related mortgage" under RESPA and 12 C.F.R. 1024.2.

62. Seterus qualifies as a "servicer" under Section 2605(i)(2) and 12 C.F.R. 1024.2.

63. 12 C.F.R. § 1024.41(e)(1) states, in relevant part:

**[I]f a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower.**

64. Seterus received a complete loss mitigation application more than 90 days before a foreclosure sale. Seterus never scheduled a foreclosure sale for the subject property.

65. Seterus violated 12 C.F.R. § 1024.41(e)(1) because it required Plaintiff to accept the permanent modification earlier than 14 days after Seterus had provided the permanent modification documents to her.

66. 12 C.F.R. § 1024.41(f) states, in relevant part:

**If a borrower submits a complete loss mitigation application . . . before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:**

**(i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;**

**(ii) The borrower rejects all loss mitigation options offered by the servicer; or**

**(iii) The borrower fails to perform under an agreement on a loss mitigation option.**

67.     Plaintiff submitted a complete loss mitigation application before Seterus referred Plaintiff's account to JBA for foreclosure.

68.     Seterus violated 12 C.F.R. § 1024.41(f) by referring Plaintiff's account to foreclosure even though Plaintiff had not rejected all loss mitigation options offered by Seterus, Plaintiff had performed under all agreements related to loss mitigation, and Seterus had not sent Plaintiff the notice required under 12 C.F.R. 1024.41(c)(1)(ii).

69.     12 C.F.R. § 1024.41(c)(1) states in relevant part:

**If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:**

**\*\*\***

**(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage loan. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.**

70.     Seterus received a complete loss mitigation application more than 37 days before a foreclosure sale.

71.     Seterus violated 12 C.F.R. § 1024.41(c)(1)(ii) because Seterus sent Plaintiff a letter on January 6, 2015 denying her for a permanent modification. The letter was sent more than 30 days after Seterus received Plaintiff's complete loss mitigation application, and the letter did not include any notice to Plaintiff as to her rights to appeal Seterus' wrongful loan modification denial.

72.     12 C.F.R. § 1024.41(h) states in relevant part:

**(h) Appeal process.**

**(1) Appeal Process Required For Loan Modification Denials. If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.**

**(2) Deadlines. A servicer shall permit a borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to paragraph (c)(1)(ii) of this section.**

73.     Seterus received a complete loss mitigation more than 90 days before a foreclosure sale.

74.     Seterus violated 12 C.F.R. § 1024.41(h) by failing to permit Plaintiff to appeal its determination to deny the loss mitigation application.

75.     12 C.F.R. 1024.38 states, in relevant part:

**(a) Reasonable policies and procedures. A servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section.**

**(b) Objectives -**

**(1) Accessing and providing timely and accurate information. The policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can:**

\*\*\*

**(ii) Investigate, respond to, and, as appropriate, make corrections in response to complaints asserted by a borrower;**

\*\*\*

**(v) Submit documents or filings required for a foreclosure process, including documents or filings required by a court of competent jurisdiction, that reflect accurate and current information and that comply with applicable law . . . .**

\*\*\*

**(2) Properly evaluating loss mitigation applications. The policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can:**

\*\*\*

> **(iv) Identify documents and information that a borrower is required to submit to complete a loss mitigation application and facilitate compliance with the notice required pursuant to § 1024.41(b)(2)(i)(B); and**

> **(v) Properly evaluate a borrower who submits an application for a loss mitigation option for all loss mitigation options for which the borrower may be eligible pursuant to any requirements established by the owner or assignee of the borrower's mortgage loan and, where applicable, in accordance with the requirements of § 1024.41.**

76.     Seterus did not maintain policies and procedures reasonably designed to: (a) investigate, respond to, and make corrections to Plaintiff's account; (b) submit documents in the foreclosure action that contained accurate information regarding Plaintiff's account; (c) properly evaluate Plaintiff's loss mitigation application; (d) identify documents and information that Plaintiff needed to submit to obtain a permanent modification; (e) facilitate adequate notice of additional requirements to obtain a permanent modification; and (f) properly evaluate Plaintiff for all loss mitigation options for which Plaintiff might be eligible.

77.     Specifically, Seterus had no procedure for checking whether it had actually provided permanent modification documents to Plaintiff before denying her a permanent modification and referring her case to foreclosure.

78.     Seterus violated 12 C.F.R. 1024.38 by failing to maintain the policies and procedures reasonably designed to ensure that Seterus could meet the objectives set forth therein.

79.     12 C.F.R. 1024.40 states, in relevant part:

**(a)  In general. A servicer shall maintain policies and procedures that are reasonably designed to achieve the following objectives:**

\*\*\*

**(2) Make available to a delinquent borrower, via telephone, personnel assigned to the borrower as described in paragraph (a)(1) of this section to respond to the borrower's inquiries, and as applicable, assist the borrower with available loss mitigation options until the borrower has made, without incurring a late charge, two consecutive mortgage payments in accordance with the terms of a permanent loss mitigation agreement.**

\*\*\*

**(b) Functions of servicer personnel. A servicer shall maintain policies and procedures reasonably designed to ensure that servicer personnel assigned to a delinquent borrower as described in paragraph (a) of this section perform the following functions:**

**(1) Provide the borrower with accurate information about:**

\*\*\*

**(ii) Actions the borrower must take to be evaluated for such loss mitigation options, including actions the borrower must take to submit a complete loss mitigation application, as defined in § 1024.41, and, if applicable, actions the borrower must take to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program offered by the servicer;**

**(iii) The status of any loss mitigation application that the borrower has submitted to the servicer;**

**(iv) The circumstances under which the servicer may make a referral to foreclosure; and**

**(v) Applicable loss mitigation deadlines established by an owner or assignee of the borrower's mortgage loan or § 1024.41.**

\*\*\*

80.     From November 2014 through June 2015, Plaintiff dealt with a different Seterus representative every time that she contacted Seterus. As a result, Plaintiff had to explain the circumstances surrounding Seterus' failure to provide Plaintiff with the permanent modification

documents each time that she called, because the Seterus representatives that she spoke with were not apprised of the situation.

81.     Further, Seterus' personnel was unable to provide Plaintiff with accurate information regarding (a) her modification and the actions she must take to secure a permanent modification, (b) the status of Plaintiff's loss mitigation application, (c) the circumstances under which Seterus would make a referral to foreclosure, or (d) the applicable deadlines for a permanent modification.

82.     Seterus violated 12 C.F.R. § 1024.40 because it did not maintain policies and procedures reasonably designed to achieve the objectives set forth therein.

83.     RESPA Section 2605(k)(1)(E) states, in relevant part:

**A servicer of a federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.**

84.     By violating 12 C.F.R. §§ 1024.41(c)(1)(ii), (e)(1), (f), and (h), 1024.40, and 10.24.38, Seterus also violated Section (k)(1)(E) of RESPA.

85.     Seterus' RESPA violations occurred from at least January 2015 through June 2015.

86.     Seterus' failure to comply with RESPA is part of a pattern and practice of non-compliance with the provisions of RESPA.

87.     Upon information and belief, Seterus' failure to comply with RESPA was intentional and willful.

88.     Plaintiff suffered damages as a result of Seterus' misconduct, including as set forth in paragraphs 54-59 above.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. grant judgment in Plaintiff's favor against Seterus;

b. award Plaintiff actual and additional damages pursuant to Section 2605(f) of RESPA;

c. award Plaintiff reasonable attorneys' fees and costs pursuant to Section 2605(f) of RESPA; and

d. award any other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATIONS OF ILLINOIS CONSUMER FRAUD ACT

89.     Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

90.     Plaintiff is a "consumer" and "person" as defined under Sections 1(c) and

(e) of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

91.     Section 2 of ICFA prohibits unfair or deceptive acts or practices and states, in

relevant part, as follows:

> **Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.**

92.     Seterus violated Section 2 of ICFA by engaging in unfair acts in the course of

conduct involving trade or commerce when dealing with Plaintiff.

93.     Seterus made unfair representations to Plaintiff as to the status of her modification

and Seterus' intentions regarding the modification.

94.     It was unfair for Seterus to, among other things:

a) Offer a loan modification premised on Plaintiff making trial period plan payments and then fail to follow through after Plaintiff made those payments;

b) Tell Plaintiff that it would provide her with permanent modification documents, then fail to provide them;

14

c) Tell Plaintiff that Seterus had provided her with permanent modification documents even though it knew or could have easily ascertained that it had not in fact done so;

d) Reject Plaintiff's January 2015 payment and falsely claim that Plaintiff had failed to complete the requirements for a permanent modification;

e) Refer Plaintiff's account to JBA for foreclosure;

f) Falsely claim to JBA that Plaintiff had failed to complete the requirements of a permanent modification and that Plaintiff's home should be foreclosed on;

g) Refuse to honor the permanent modification even after confirming that Seterus had never provided Plaintiff with the permanent modification documents; and

h) Require Plaintiff to make a lump sum payment equal to seven monthly mortgage payments to qualify for the same permanent modification to which Plaintiff was already entitled.

95.     It was unfair for Seterus to refuse to communicate with Plaintiff clearly or respond to Plaintiff's requests for information honestly or accurately.

96.     Seterus' communications and conduct were purposefully confusing, misleading, oppressive, and designed to maximize profits from a scheme to collect trial period payments and willfully ignore loss mitigation and loan modification rules by covertly rejecting applications, without notice or warning, and selling homes in foreclosure sales after collection trial period payments.

97.     Plaintiff relied on Seterus' actions by, (a) making payments under the trial period plan, (b) waiting for Seterus to provide her with the permanent modification documents, (c) paying the appearance fee in the foreclosure action, (d) taking off two and one-half days of her working and losing the related wages to address the issues that Seterus had created through its own misconduct, and (e) making a lump-sum payment equal to seven monthly payments to save her home from an unlawful foreclosure.

15

98. Plaintiff's inquiries regarding the status of the permanent modification agreement were never adequately investigated or accurately answered.

99. Seterus' conduct was willful, malicious, unfair, and arbitrary.

100. Seterus' conduct offends public policy as it demonstrates an industry-wide practice of improperly soliciting trial period payments without actually providing the necessary paperwork required to permanently modify the mortgage loan and instead pursuing foreclosure on the home.

101. Seterus' actions cause substantial injury to consumers generally because:

   a) consumers reasonably expect their mortgage servicer's promises to be honored and their loans and accounts to be properly managed;

   b) consumers reasonably expect that creditors and loan servicers will communicate with them truthfully and accurately regarding their account;

   c) consumers reasonably expect that loan servicers will not induce payments on false or unfair pretenses;

   d) consumers reasonably expect that large corporations will honor and respect federal regulations; and

   e) consumers do not expect to be blindsided by a sudden foreclosure action after relying upon unfair or misleading representations regarding a permanent loan modification.

102. Seterus' overall scheme was designed to thwart Plaintiff's attempts to enforce the loan modification and to discourage Plaintiff from continuing to fight for her home.

103. Plaintiff could not avoid these immoral undertakings because Seterus would not provide the required documents for the permanent loan modification, even though Plaintiff made all required trial period payments and completed the telephonic application for the permanent loan modification. Plaintiff was forced into a perpetual state of confusion, depriving her of a peaceful existence.

104. Seterus' conduct was unethical and unending, and Plaintiff had no actual control over: (a) Seterus' failure to send Plaintiff the necessary documents to complete the permanent loan modification; (b) Seterus' misleading and unfair representations regarding the status of the permanent modification documents; (c) Seterus' decision to refer Plaintiff's account to foreclosure even though Plaintiff had performed all requirements for a permanent modification; (d) Seterus' decision to refer Plaintiff's account to foreclosure even though Seterus had in its possession documents and other evidence showing that Seterus had never provided Plaintiff with the permanent modification documents; (e) Seterus' decision to maintain the foreclosure referral even after Plaintiff caused Seterus to confirm that Seterus had never provided Plaintiff with the permanent modification documents; (f)  how Seterus treated the subject loan and the modification process internally; or (g) whether Seterus' representations were fair, accurate, and truthful.

105. All of Seterus' conduct described herein occurred in the course of conduct involving trade or commerce.

106. Seterus failed to employ appropriate mechanisms to reasonably resolve Seterus' servicing and loan modification errors.

107. Seterus' conduct is part of a pattern and practice of behavior in which Seterus routinely engages as part of its business model. It is Seterus' normal business practice to disregard existing agreements and state and federal law for its own pecuniary gain, to the detriment of consumers.

108. An award of punitive damages is appropriate because Seterus' conduct was outrageous, willful, wanton, and showed reckless disregard for the rights of Plaintiff.

109.     Plaintiff suffered damages as a result of Seterus' misconduct, including as set forth in paragraphs 54-59 above.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a.   grant judgment in Plaintiff's favor against Seterus;

    b.   award Plaintiff actual and punitive damages in an amount to be determined at trial for the underlying ICFA violations;

    c.   award Plaintiff reasonable attorneys' fees and costs pursuant to Section 10a(c) of ICFA; and

    d.   award any other relief this Honorable Court deems equitable and just.

### JURY DEMAND

Plaintiff demands trial by jury.

Respectfully Submitted,

By: /s/ *Robert W. Harrer*
One of Plaintiff's Attorneys

Robert W. Harrer
**The Law Office of Robert W. Harrer, P.C.**
111 West Washington Street, Suite 1360
Chicago, Illinois 60602
Tel. 312-600-8466 | Fax 312-610-5646
rob.harrer@harrerlaw.com

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: */s/ Robert W. Harrer*
One of Plaintiff's Attorneys


## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: */s/ Robert W. Harrer*
One of Plaintiff's Attorneys

## **VERIFICATION OF COMPLAINT**

STATE OF ILLINOIS    )
                                  ) ss
COUNTY OF COOK    )

Pursuant to 28 U.S.C. § 1746, Plaintiff Rosalynn Walker, verifies, certifies, and declares as follows:

1.  I am a Plaintiff in this civil proceeding.

2.  I have read the civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true to the best of my knowledge, information, and belief, formed after reasonable inquiry.

3.  I have not filed this Complaint for any improper purpose, such as to harass any Defendant, cause unnecessary delay to any Defendant, or create a needless increase in the cost of litigation to any Defendant named in the Complaint.

4.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on    October 4, 2017
                              Date

_____
Signature