# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROSALYNN WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 C 7194 |
| ) | |
| SETERUS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Rosalynn Walker obtained a home mortgage loan that was serviced by Seterus, Inc. When Walker defaulted on her payments, Seterus offered Walker a loan modification. But when she did not return the required modification agreement, Seterus denied her loan modification application and referred her account for foreclosure. Walker has sued Seterus for violating the Real Estate Settlement Procedures Act (RESPA) and the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA).

## Facts

In 2008, Walker obtained a loan from CitiMortgage, Inc. secured by a mortgage of her home. The loan was later sold to Federal National Mortgage Association (Fannie Mae). Seterus serviced the loan starting in February 2014. Later in 2014, Walker fell behind on her payments and defaulted on her loan.

In July 2014, Seterus offered Walker a trial period plan that, if she successfully

completed it, would result in a loan modification. Specifically, Walker was required to make three monthly payments in specified amounts starting on August 1, 2014. Walker did so, and Seterus sent her a modification agreement on November 12, 2014 via FedEx overnight delivery. A letter enclosed with the agreement said that to accept it, Walker had to sign the agreement and return it by December 1; it also said that if she did not do so, Seterus could revoke its offer. The envelope was, however, returned to Seterus on December 1 because it had not been delivered after more than one attempt.

On December 23, Seterus says, it sent the material again by U.S. Mail, along with a letter stating that Seterus had not received the modification agreement and that if Walker did not sign and return it by January 6, the proposed modification would be cancelled, and Seterus could continue collection activity. Seterus did not receive a signed agreement by the deadline. Walker says, however, that she did not receive the December 23 letter or its contents.

On January 6, 2015, Seterus sent Walker a letter stating that it had denied the loan modification. Walker admits that she received this letter but says that she did not get it until late January or early February. After sending the January 6 letter, Seterus made a number of automated calls to Walker stating that she was in default and asking her to contact Seterus. In April 2015, Walker submitted a "borrower response package" to Seterus. Seterus acknowledged receipt of the package but determined it was incomplete.

Fannie Mae filed a foreclosure lawsuit against Walker later in April 2016. At that point, the loan was more than four months overdue. But Walker kept making payments to Seterus, and Seterus offered her a loan modification in July 2015. Walker signed the

2

modification and returned it to Seterus in late July.

In mid-August, Fannie Mae dropped the foreclosure lawsuit. Walker contends, however, that this modification was less financially favorable to her than the proposed 2014 modification; she incurred additional late fees and charges in the interim; and she incurred expenses in connection with the foreclosure case while it was pending.

### Discussion

"Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019) (internal quotation marks omitted). In considering a motion for summary judgment, the Court construes the facts and draws reasonable inferences "in favor of the party against whom the motion under consideration was filed." *Id.*

**1.  RESPA claim**

Walker's first claim against Seterus is asserted under RESPA, specifically 12 U.S.C. § 2605(k)(1)(E). That provision prohibits a servicer of a federally-related mortgage like this one from failing to comply with Bureau of Consumer Financial Protection regulations. Walker cites several such regulations. First, 12 C.F.R. § 1024.41(e)(1) states that if the servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale, it may require the borrower to accept or reject a loss mitigation option no earlier than 14 days after the servicer provides the offer. Walker contends Seterus violated this provision by, effectively, requiring her to accept the modification agreement even before it provided the agreement to her. Second, 12 C.F.R. § 1024.41(f) prohibits a servicer from making the first notice or filing

3

required for any foreclosure process if the borrower submits a complete loss mitigation application beforehand, unless (1) the servicer gave notice to the borrower that she is ineligible for any loss mitigation or appeal option, (2) the borrower rejects all loss mitigation options, or (3) the borrower fails to fulfill the loss mitigation agreement. 12 C.F.R. § 1024.41(f). Walker contends that none of the exceptions apply, and thus Seterus violated this provision by referring her account for foreclosure. Third, 12 C.F.R. § 1024.41(c)(1) states that if the servicer receives a full loss mitigation application more than 37 days before a foreclosure sale, it must provide the borrower within 30 days a notice listing loss mitigation options the servicer will offer. Walker contends that Seterus violated this regulation by sending her a letter stating that it denied her modification more than 30 days after allegedly receiving her complete application. Finally, 12 C.F.R. § 1024.41(h) requires a servicer to allow a borrower to appeal the servicer's decision deny a loss mitigation application if the servicer receives a complete application 90 days or more before a foreclosure sale; Walker contends that Seterus did not allow her an appeal.

Walker cannot maintain a claim under RESPA for violations of the cited regulations. Each of the cited regulations requires receipt of a complete loss mitigation application from the borrower, defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b). It is not genuinely disputed that Walker did not provide Seterus with a complete loss mitigation application before it commenced foreclosure proceedings. Walker claims that she completed a loss mitigation application by

4

telephone, but it is undisputed that Seterus does not accept telephonic loss mitigation applications. The Court understands that Walker contends Seterus did not actually get a loss mitigation application into her hands before foreclosure proceedings were initiated, but the fact is that she did not submit a completed modification agreement before that date. Thus she cannot maintain a claim under RESPA for violation of the cited regulations.

Walker also alleged in her complaint, as part of her RESPA claim, that Seterus violated regulations requiring servicers to maintain certain types of policies and procedures. Compl. ¶¶ 75-82. Seterus sought summary judgment on this aspect of Walker's RESPA claim as well, saying that it had demonstrated it had appropriate policies and procedures in place. *See* Def.'s Mem. in Support of Motion for Summ. J. at 6. In response, Walker did not argue otherwise; rather, she contended that the existence of these procedures did not show that Seterus followed them in her case. *See* Pl.'s Resp. in Opp. of Def.'s Mot. for Summ. J. at 14. This amounts to a concession that she cannot maintain a RESPA claim for failure to maintain the required policies and procedures.

For these reasons, Seterus is entitled to summary judgment on Walker's RESPA claim (Count 1).

**2.      ICFA claim**

To sustain a claim under the ICFA, a plaintiff must prove: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred during course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932,

934 (7th Cir. 2010). Walker contends that Seterus's conduct amounted to an unfair practice violative of the ICFA. Conduct is unfair under the statute if it "(1) violate[s] public policy; (2) [is] so oppressive that the consumer has little choice but to submit, and; (3) cause[s] consumers substantial injury." *Id.* at 935. A court may, however, find unfairness even if the conduct does not satisfy all three of these criteria. *Id.*

Walker contends that Seterus committed an unfair practice by offering her a loan modification; effectively making it impossible for her to obtain a modification by failing to deliver it to her successfully; and then referring her loan and mortgage for foreclosure even though it ought to have known that the modification agreement had never been delivered. In seeking summary judgment, Seterus relies upon the presumption of receipt of mailed materials, saying that it mailed Walker the required application and she should be deemed to have received it. *See Godfrey v. United States,* 997 F .2d 335, 338 (7th Cir. 1993). As this Court has stated, however,

> [t]he presumption of delivery following mailing is rebuttable by evidence of nondelivery. For example, in *In re Longardner & Assoc.,* 855 F.2d 455, 459 (7th Cir. 1988), the Seventh Circuit found that the plaintiff's denial of the delivery created a genuine issue of material fact. *See also Vaden v. IndyMac Bank, F.S.B.,* No. 02 C 1150, 2003 WL 22136306, at *4–5 (N.D. Ill. Sept. 16, 2003) (denying summary judgment because plaintiff denied receipt at his deposition); *Jones v. Citibank, FSB,* 844 F. Supp. 437, 441 (N.D. Ill. 1994) (denying summary judgment because co-plaintiff's affidavit unequivocally denied receipt of a letter).

*Davenport v. Potter*, No. 06 C 4614, 2008 WL 4126603, at *4 (N.D. Ill. Aug. 15, 2008) (Kennelly, J.). Walker has denied under oath that she received the materials from Seterus, and this is sufficient to rebut the presumption of delivery. Her actual receipt of the materials from Seterus is genuinely disputed.

Seterus separately relies on a term of the mortgage stating that any notice to the

6

borrower connected with the mortgage "shall be deemed to have been given to Borrower when mailed by first class mail." But Walker is not asserting a breach of contract claim, and Seterus cites no authority to support the proposition that a contractual term like this one defeats an unfair practice claim asserted under the ICFA.

Seterus also argues that its unfair conduct did not proximately cause Walker's damages. Rather, it contends, any damages were caused by Walker's own default on the mortgage loan. This contention may have merit, but its determination involves genuinely disputed inferences that the Court cannot appropriately draw against Walker on a motion for summary judgment.

For these reasons, Seterus is not entitled to summary judgment on Walker's ICFA claim (Count 1).

## Conclusion

For the reasons stated above, the Court grants summary judgment in favor of defendant on Count 1 of plaintiff's complaint but denies defendant's motion for summary judgment on Count 2. The case is set for a status hearing on July 30, 2019 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

Date: July 21, 2019

                                                         _____
                                                                 MATTHEW F. KENNELLY
                                                                 United States District Judge